# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2016, 7:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cathy M. Brownson
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

B.R. (Minor Child) and

M.R. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

November 15, 2016

Court of Appeals Case No.
29A04-1602-JT-353

Appeal from the Hamilton Superior Court

The Honorable Steven R. Nation, Judge

The Honorable Todd L. Ruetz, Magistrate

Trial Court Cause No.
29D01-1503-JT-400

**Bailey, Judge.**

# Case Summary

[1]    M.R. ("Father") appeals the termination of his parental rights upon the petition of the Indiana Department of Child Services ("DCS"). M.R. raises the sole restated issue of whether there was sufficient evidence to terminate his parental rights. We affirm.

# Facts and Procedural History

[2]    Father and M.M. ("Mother")[1] had one son together, B.R. ("Child"). Child was born on August 28, 2013, and on that day DCS received a report indicating, in part, that Mother tested positive for amphetamines and marijuana while pregnant with Child. During its investigation, DCS learned that Child was born with drugs in his system and was experiencing drug withdrawal. DCS further learned that Father had substance abuse issues, and DCS had concerns about potential domestic violence between Father and Mother. Child remained in Mother's care because Father and Mother agreed to a safety plan. As part of the plan, Father and Mother would stay apart until services were in place.

[3]    On September 5, 2013, DCS filed a petition alleging that Child was a Child in Need of Services ("CHINS"). DCS later found Father and Mother together with Child in violation of the safety plan, and took Child into custody on

---

[1] Mother consented to Child's adoption; only Father's appeal is before us.

October 30, 2013. At a detention hearing the next day, the court ordered that Child be placed with Child's maternal grandmother ("Grandmother").

[4] Following a fact-finding hearing on December 6, 2013, Child was adjudicated a CHINS. The court entered a dispositional decree on January 13, 2014 ordering Father and Mother to participate in services. Among the ordered services, Father was to participate in a substance abuse assessment and follow all recommendations. The court also ordered Father to comply with requests for drug screens, attend visitation sessions with Child, and cooperate with DCS and the guardian ad litem ("GAL") by maintaining weekly contact with the DCS case manager.

[5] After the dispositional order, Father did not participate in drug screens or substance abuse services. Father initially attended supervised visits with Child, but his sporadic attendance led to discharge from a service provider in April 2014. The next month, Father and Mother requested services as a couple. They began receiving home-based therapy. They also, together, had supervised visits with Child in May and June of 2014. Those visits went well, and Father and Mother were successfully discharged from the service provider. DCS then developed a progressive visitation plan to transition Father and Mother to unsupervised visitation, with the possibility of an eventual home visit. However, amid concerns about domestic violence between Father and Mother, on August 7, 2014, DCS met with Father and Mother and initiated a new safety plan. Visitation reverted to supervised visits. At that meeting, Father told DCS that he wanted his son back and indicated he would be compliant.

[6] Later in August, DCS initiated another safety plan. The next month, Father and Mother separated with Father expressing to DCS that he no longer wished to continue with home-based therapy. Father's last contact with Child was in August of 2014. Father did not contact DCS to renew visitation with Child. DCS tried to contact Father to renew visitation, but Father did not respond.

[7] Although the permanency plan was initially reunification, following a hearing on December 16, 2014, the trial court changed the plan to adoption. On March 24, 2015, DCS petitioned to terminate the parental rights of Father and Mother as to Child. The trial court held a fact-finding hearing on December 8, 2015. At that time, Father participated telephonically because he was incarcerated on recent charges. On January 12, 2016, the trial court entered its findings of fact, conclusions thereon, and order terminating Father's parental rights.

[8] This appeal ensued.

# Standard of Review

[9] When reviewing the termination of parental rights, we do not judge witness credibility. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). Rather, we give "due regard" to the trial court's unique opportunity to evaluate the credibility of witnesses. Ind. Trial Rule 52(A). Moreover, we do not reweigh the evidence. *In re I.A.*, 934 N.E.2d at 1132. We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005).

[10] Where, as here, a trial court has entered findings of fact and conclusions thereon, we apply a two-tiered standard of review. *In re I.A.*, 934 N.E.2d at 1132. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id.* Pursuant to Trial Rule 52(A), we will not set aside the findings or judgment unless "clearly erroneous." A finding is clearly erroneous "when the record contains no facts to support [the finding] either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A trial court's judgment is clearly erroneous if "its findings of fact do not support its conclusions of law or . . . its conclusions of law do not support its judgment." *Id.* We must also, however, take into account the express statutory requirement that "[a] finding in a proceeding to terminate parental rights must be based upon clear and convincing evidence." Ind. Code § 31-37-14-2. Thus, to synthesize and harmonize the requirements of the statute and Trial Rule 52(A), "to determine whether a judgment terminating parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment." *In re I.A.*, 934 N.E.2d at 1132.

[11] Our supreme court and the United States Supreme Court have reiterated that "[a] parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Bester*, 839 N.E.2d at 147 (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Indeed, although parental interests are not absolute, "the parent-child relationship is 'one of the

most valued relationships in our culture.'" *Id.* at 147 (quoting *Neal v. DeKalb Cty. Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). Accordingly, the Indiana statute governing the termination of parental rights sets a high bar for severing the parent-child relationship. *See* I.C. § 31-35-2-4(b).

[12] Under Indiana Code Section 31-35-2-4(b)(2), a petition seeking to terminate the parent-child relationship must allege, in pertinent part:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> *       *       *       *
>
> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> *       *       *       *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove each element by clear and convincing evidence. *In re I.A.*, 934 N.E.2d at 1133.

# Discussion and Decision

[13]    Father contends that there was insufficient evidence to terminate his parental rights. Father specifically challenges whether DCS met its burden in proving (1) that termination was in Child's best interests and (2) that there was a satisfactory plan for the care and treatment of Child.

## Best Interests

[14]    In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* The trial court need not wait until the child is irreversibly harmed before terminating the parent-child relationship. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). "Permanency is a central consideration in determining the best interests of a child." *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). Moreover, a GAL's testimony can support a finding that termination is in the child's best interests. *McBride*, 798 N.E.2d at 203.

[15]    Father argues that the trial court should have included certain evidence favorable to Father in its findings. He contends that because the favorable

evidence was absent from the findings, it is indiscernible whether the trial court properly considered the totality of the evidence in determining Child's best interests. Father's argument amounts to a request to reweigh the evidence, which we must decline. *See In re I.A.*, 934 N.E.2d at 1132.

[16] Here, the evidence favorable to the trial court's determination indicated that Father failed to comply with the court's dispositional order. Father failed to stay in contact with DCS and, at the time of the fact-finding hearing, had not seen Child for a year and three months, which was more than half of Child's life. Father did not contact DCS to renew visitation and did not respond when DCS contacted him to renew visitation. The GAL attempted to contact Father on multiple occasions, initially with limited response and then ultimately no response. The GAL believed termination of Father's parental rights was in Child's best interests. Father refused to participate in DCS drug screening and did not complete the referred substance abuse assessment. Father chose not to participate in therapy. Moreover, although Father had not been convicted of his recent charges at the time of the fact-finding hearing, Father had a pattern of criminal history, including prior convictions for domestic battery in 2009 and for possession of paraphernalia in 2012. During the pendency of the CHINS proceeding, Father was on probation or incarcerated the majority of the time. Father's encounters with law enforcement affected his ability to care for Child.

[17] Father contends that DCS could have kept Child in relative placement while Father readied himself for parenthood, which is what Father requested at the fact-finding hearing. Father contends that the goal of permanency for Child

could have been served while still giving Father services. However, the trial court "has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination." *In re. E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). Moreover, a parent's "failure to exercise the right to visit one's children demonstrates a 'lack of commitment to complete the actions necessary to preserve [the] parent-child relationship." *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied* (quoting *In re A.L.H.*, 774 N.E.2d 896, 900 (Ind. Ct. App. 2002)).

[18] Given Father's continued failure to comply with the dispositional order or make efforts to visit Child, and in light of the GAL's testimony, we find that DCS carried its burden and proved with sufficient evidence that termination of Father's parental rights was in Child's best interests. We find no clear error.

## Satisfactory Plan

[19] Father contends that DCS failed to prove by clear and convincing evidence that that there was a satisfactory plan for the care and treatment of Child. For a plan to be satisfactory, it "need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re D.D.*, 804 N.E.2d at 268. Moreover, this Court has held that "[a]ttempting to find suitable parents to adopt . . . is clearly a satisfactory plan." *Lang*, 861 N.E.2d at 375.

[20] Here, Father acknowledges that DCS's proffered plan was adoption. However, Father argues that DCS did not prove the plan was satisfactory because the

prospective adoptive parent, Grandmother, did not testify, nor did DCS introduce evidence that Grandmother had been approved to adopt Child. Again, this amounts to a request to reweigh the evidence, which we cannot do. *See In re I.A.*, 934 N.E.2d at 1132.

[21] We find that DCS met its burden in proving there was a satisfactory plan for Child.

# Conclusion

[22] Clear and convincing evidence supports the judgment terminating Father's parental rights.

[23] Affirmed.

Riley, J., and Barnes, J., concur.